# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-31188

United States Court of Appeals
Fifth Circuit

**FILED**
September 7, 2017

Lyle W. Cayce
Clerk

LISA HERNANDEZ,

      Plaintiff - Appellant

v.

EARL THERIOT, Individually and in his capacity as the Chief of Police of the Town of Sorrento; TOWN OF SORRENTO,

      Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-42

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

In this case we decide whether the district court erred when it held that Sorrento Police Chief Earl Theriot is not liable to Lisa Hernandez for intentional infliction of emotional distress ("IIED") or false imprisonment.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31188

**I.**

On November 1, 2013, Hernandez passed out drunk outside an antique store in Sorrento, Louisiana. In response to a 911 call reporting Hernandez's inebriated state, Theriot took her into custody. Theriot drove Hernandez to her house, but instructed her to remain quiet while he called dispatch and falsely reported dropping her off. He then transported Hernandez to the police station in his police car. While en route, Theriot sexually assaulted Hernandez, groping her chest and telling her it was her "lucky day" because "he was going to do [her] a favor and [she] was going to do him a favor." Theriot took her to his office, where she remained for some time. Although Hernandez could sit outside the back door to smoke and she used his telephone to call her boyfriend several times when Theriot left the office, Hernandez "believed she could not leave based on the implied threat of being sent to jail if she failed to cooperate with Theriot's demands." During her time in his office, she complied with his multiple requests for sexual favors.

The FBI later interviewed Theriot about these events. He eventually pleaded guilty to one count of making false statements in violation of 18 U.S.C. § 1001(a)(2), and he agreed that "he 'engaged in inappropriate sexual contact' with [Hernandez] after she was taken to his office."

Hernandez sued Theriot and the Town of Sorrento under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment due process rights. She also sought damages for the state law torts of sexual assault, sexual battery, IIED, and false imprisonment. After a bench trial, the district court issued a ruling with its findings of fact and conclusions of law, holding both Theriot and the Town liable under Section 1983 and for sexual assault and sexual battery.[1] The district court further held that Theriot and the Town were

---

[1] The parties do not dispute the district court's findings of fact.

not liable to Hernandez for IIED or false imprisonment. Hernandez timely appealed.

## II.

Hernandez argues that the district court erred in holding that Theriot was not liable for IIED or false imprisonment.

"In the appeal of a bench trial, we review findings of fact for clear error." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009). In making this determination, we apply Louisiana substantive law, but we "utilize our own federal standards of appellate review in evaluating the district court's findings." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 647 n.12 (5th Cir. 2002). Questions of law are reviewed de novo. *Dickerson*, 556 F.3d at 294. We will address each of Hernandez's claims in turn.

## A.

To succeed on her claim of IIED under Louisiana law, Hernandez must prove: (1) Theriot's conduct was extreme and outrageous; (2) she suffered severe emotional distress; and (3) Theriot "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The district court found that "[t]he uncontroverted evidence easily satisfies the first two elements," but concluded that "there was no evidence presented at trial to establish element (3): that Theriot desired to inflict severe emotional distress or was certain or substantially certain that such distress would result from his conduct."

First, Hernandez argues that, under *White*, Theriot knew that his conduct was certain or substantially certain to cause Hernandez distress. Because the district court's finding that Theriot did not desire or intend to cause Hernandez to suffer severe emotional distress is a finding of fact, the standard governing appellate review thereof is that set forth in Federal Rule

of Civil Procedure 52(a): "Findings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." The question before us, then, is whether the district court's failure to find that Theriot desired to inflict severe emotional distress, or knew that such distress was certain or substantially certain to result from his conduct, was clearly erroneous. *See White*, 585 So.2d at 1210.

A review of the entire record before us does not leave us with a "definite and firm conviction that a mistake has been committed." *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). In making its factual determinations, the district court credited some, but not all, of Hernandez's testimony as to the intentional, tortious actions Theriot inflicted upon her. While the court did not explain in detail why it rejected Hernandez's contention that Theriot desired or intended to cause her severe emotional distress, the court did assign more copious reasons for its rejection of her false imprisonment claim. The court's reasoning there, which we discuss in the following section of this opinion, appears to explain in large part what the court found to be missing in Hernandez's proof of her IIED claim.

Second, Hernandez argues that Theriot failed to prove that he did not intend to cause Hernandez emotional distress. This argument misconstrues the law. It is Hernandez, not Theriot, who bears the burden of proving the requisite intent. *White*, 585 So. 2d at 1209 ("[I]n order to recover for [IIED], a *plaintiff* must establish" the three elements of the claim.) (emphasis added).

Finally, Hernandez argues that the district court erred by failing to infer Theriot's intent from his failure to testify. Although it is true that the "Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify," *Burdine v. Johnson*, 262 F.3d 336, 366 (5th Cir.

No. 16-31188

2001), Hernandez has failed to adduce any case law that indicates that a fact finder is *required* to draw such adverse inferences. Accordingly, the district court did not clearly err.

**B.**

Under Louisiana law, "[f]alse imprisonment is the unlawful and total restraint of the liberty of the person." *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 750 (La. Ct. App. 1999) (emphasis omitted) (quoting *Crossett v. Campbell*, 48 So. 141, 143 (1908)). It "consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006). As such, false imprisonment "may not be predicated on a person's unfounded belief that [she] was restrained" when she was not, nor is "[a]pprehension that one might in the future . . . be prosecuted" sufficient. *Kelly*, 745 So. 2d at 750. "Bare words are insufficient to effect an imprisonment if the person to whom they are spoken is not deprived of freedom of action." *Id.*

The district court concluded that, "[b]ased on the testimony presented at trial, the Court cannot find that Plaintiff has satisfied her burden on the false imprisonment claim." In reaching this determination, the district court considered: (1) the fact that Hernandez chose not to exit Theriot's car when he drove her to her mother's house; (2) Hernandez's own testimony that she was not locked in Theriot's office and placed several phone calls to her boyfriend while inside; and (3) Hernandez's failure to mention in her FBI interview that Theriot used her belt to tie her wrists as she claimed at trial. Hernandez has not challenged any of these factual findings. Instead, she relies on her own testimony at trial to argue that "her liberty was taken from her" because Theriot repeatedly told her "that the door [would be] locked." But as the district court noted, Theriot herself later admitted that it was not locked because she

No. 16-31188

was able to leave through a back door to smoke a cigarette. Accordingly, the district court did not clearly err in its factual determinations on this issue.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.